# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

*for the*

# 𝔉𝔦𝔣𝔱𝔥 ℭ𝔦𝔯𝔠𝔲𝔦𝔱

Case No. 22-40786

NETFLIX, INCORPORATED,

*Plaintiff-Appellee,*

v.

LUCAS BABIN,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS, LUFKIN

## BRIEF OF *AMICUS CURIAE* FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION IN SUPPORT OF PLAINTIFF-APPELLEE AND AFFIRMANCE

JT MORRIS
FOUNDATION FOR INDIVIDUAL RIGHTS
  AND EXPRESSION
*Attorneys for Amicus Curiae Foundation
  for Individual Rights and Expression*
700 Pennsylvania Avenue, SE, Suite 340
Washington, DC 20003
(215) 717-3473
jt.morris@thefire.org

## SUPPLEMENTAL STATEMENT OF INTERESTED PARTIES

Case No. 22-40786, *Netflix, Inc. v. Lucas Babin*.

The undersigned counsel of record certifies that, in addition to the persons and entities in the parties' Certificates of Interested Persons, the following listed persons and entities as described in the fourth sentence of Rules 28.2.1 and 29.2 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Person or Entity | Connection to Case |
|---|---|
| Foundation for Individual Rights and Expression (FIRE) | *Amicus curiae* |
| JT Morris | Counsel for *amicus* FIRE |

Under Federal Rule of Appellate Procedure 26.1(a), counsel for *amicus* certifies that (1) *amicus* does not have any parent corporations, and (2) no publicly held companies hold 10% or more of the stock or ownership interest in *amicus*.

/s/ JT Morris
Attorney of record for
*amicus* FIRE

June 7, 2023

# TABLE OF CONTENTS

SUPPLEMENTAL STATEMENT OF INTERESTED PARTIES ............ii

TABLE OF AUTHORITIES................................................................iv

INTEREST OF *AMICUS CURIAE* ........................................................1

SUMMARY OF ARGUMENT ................................................................2

ARGUMENT ........................................................................................5

I.    The Purpose of *Younger* Abstention Is Served By Broadly Considering Different Types of Facts Showing Bad Faith.........................................................................................5

II.    Historically, This Court and Others Have Considered Similar Facts as Proof of Bad Faith.................................................8

    A.    Fifth Circuit precedent establishes that many types of facts can demonstrate bad-faith prosecution. ...........................................................................9

    B.    The facts the district court considered in finding bad faith resembles those this Court and others have considered in earlier cases. ..........................................12

III.    Babin's Proffered Evidence of Good Faith Does Not Render the District Court's Finding of Bad Faith Clearly Erroneous. ...................................................................................16

CONCLUSION ....................................................................................18

CERTIFICATE OF SERVICE...............................................................19

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT ....20

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Fitzgerald v. Peek,*
  636 F.2d 943 (5th Cir. 1981) ................................................................ 9

*Gonzalez v. Trevino,*
  60 F.4th 906 (5th Cir. 2023) ................................................................ 2

*Hefner v. Alexander,*
  779 F.2d 277 (5th Cir. 1985) ........................................................... 2, 6

*Krahm v. Graham,*
  461 F.2d 703 (9th Cir. 1972) .............................................................. 15

*Netflix, Inc. v. Babin,* No. 9:22-CV-00031,
  2022 WL 16948603 (E.D. Tex. Nov. 14, 2022) ............................ passim

*New Orleans Pub. Serv., Inc. v. Council of the City of New*
  *Orleans,* 491 U.S. 350 (1989) ............................................................. 6

*Nobby Lobby, Inc. v. City of Dallas,*
  970 F.2d 82 (5th Cir. 1992) .................................................. 11, 13, 17

*Perez v. Ledesma,*
  401 U.S. 82 (1971) ............................................................................. 8

*Shaw v. Garrison,*
  467 F.2d 113 (5th Cir. 1972) ..................................... 9, 10, 14, 15, 17

*Sprint Commc'ns, Inc. v. Jacobs,*
  571 U.S. 69 (2013) ......................................................................... 6, 8

*Susan B. Anthony List v. Driehaus,*
  573 U.S. 149 (2014) ........................................................................... 6

*United States v. Williams,*
  553 U.S. 285 (2008) ........................................................................... 4

*Universal Amusement Co., Inc. v. Vance,*
  559 F.2d 1286 (5th Cir. 1977) ............................................. 10, 11, 13

*Wilson v. Thompson,*
  593 F.2d 1375 (5th Cir. 1979) .................................................... 5, 7, 8, 14

*Younger v. Harris,*
  401 U.S. 37 (1971) ........................................................................ 2, 6, 7

**Statutes**

Tex. Pen. Code § 43.25 ....................................................................... 12, 13

**Rules**

Fed. R. Civ. P. 52(a) ................................................................................... 17

# INTEREST OF *AMICUS CURIAE*[1]

The Foundation for Individual Rights and Expression (FIRE) is a nonpartisan, nonprofit organization dedicated to defending the individual rights of all Americans to free speech and free thought—the most essential qualities of liberty. Since 1999, FIRE has successfully defended the rights of individuals through public advocacy, strategic litigation, and participation as *amicus curiae* in cases that implicate expressive rights under the First Amendment. *See, e.g., Villarreal v. City of Laredo, Texas*, No. 20-40359 (5th Cir. argued en banc Jan. 25, 2023); Brief of FIRE as *Amicus Curiae* in Support of Plaintiff-Appellee, *Rogers v. Smith*, No. 22-30352 (5th Cir. filed Jan 27, 2023).

FIRE has witnessed a rising trend of government officials abusing their powers to punish speakers with whom they disagree, violating those speakers' First Amendment rights. But bad motive is difficult to prove, particularly at early stages of the case before discovery. FIRE thus urges this Court to affirm the district court's finding and make clear that while the bad-faith exception to *Younger* abstention may be narrow, the types

---

[1] Under Rule 29(a)(4)(E), counsel for *amicus* certifies that no counsel for a party authored this brief in whole or in part. Further, no person, other than *amicus*, its members, or its counsel contributed money intended to fund preparing or submitting this brief. All parties have consented to the filing of this brief.

of facts district courts may consider in finding the bad-faith exception satisfied are broad, particularly at the preliminary injunction stage.

## SUMMARY OF ARGUMENT

When government actors misbehave, they must be held accountable. And when they abuse the law for political ends, it is up to courts—including federal courts—to stop them. The Supreme Court recognized this in *Younger v. Harris* when it expressly carved out bad-faith criminal prosecutions from its abstention doctrine. 401 U.S. 37, 56 (1971).

Yet it can be near-impossible to prove a government official's bad faith, especially before discovery. After all, "[f]ew officials will admit that they abuse the coercive powers of government to punish and silence their critics. They're often able to invent some reason to justify their actions." *Gonzalez v. Trevino*, 60 F.4th 906, 907 (5th Cir. 2023) (Ho, J., dissenting from denial of rehearing en banc). For this reason, it is essential that courts take an expansive view of the facts plaintiffs can allege or prove to show bad faith, at least at the preliminary injunction stage. True enough, *Younger*'s "'bad faith' exception is narrow and should be granted parsimoniously." *Hefner v. Alexander*, 779 F.2d 277, 280 (5th Cir. 1985).

But the kinds of facts that can *prove* bad faith should not be so limited. Otherwise, the exception will shrink from narrow to nonexistent.

Here, Netflix offered evidence of various facts to show that Tyler County District Attorney Lucas Babin brought criminal child pornography charges against Netflix in bad faith, based on its decision to stream the controversial French film *Cuties* on its video platform. And the district court rightly considered Netflix's evidence in granting its motion for a preliminary injunction against the state prosecutions. For instance, the district court considered:

- That no other prosecutor in the United States even sought child pornography charges against Netflix for *Cuties*.

- How Babin decided to seek more indictments only after Netflix exercised its constitutional right to seek habeas relief against the original indictment.

- The absence of any sex scenes in the film.

- That Babin sought the New Indictments based on nudity, despite knowing the only nudity in *Cuties* was the fleeting glance of an adult woman's breast.

3

- That Netflix is a "reputable movie distributor" under *United States v. Williams,* 553 U.S. 285 (2008).

*Netflix, Inc. v. Babin*, No. 9:22-CV-00031, 2022 WL 16948603, at *7–12, (E.D. Tex. Nov. 14, 2022).

Viewed together, the court concluded those assorted facts supported a finding that "at least one of the New Indictments were brought without any hope of obtaining a valid conviction," and in the alternative, that Babin's prosecution of Netflix "was motivated at least in part by a purpose to retaliate for or to deter that conduct." *Id.* at *11, *12.

Case law in this Circuit and elsewhere affirms that courts can consider a wide range of facts—including those the district court considered—to find bad faith. And contrary to District Attorney Babin's arguments, no law in this Circuit or elsewhere establishes that polite behavior from a prosecutor *during* a criminal prosecution quells evidence of bad-faith motive in *bringing* it—the point at which Babin violated the First Amendment. Sheep's clothing does not disguise ill-motive.

Ultimately, the question before the district court on *Younger* abstention was one of motive: Did Babin criminally charge Netflix for an improper reason? The district court found the answer to be yes, by a

4

preponderance of the evidence. Neither the kinds of evidence the court considered, nor its weighing of that evidence, were clearly erroneous. The Court should affirm.

## ARGUMENT

The district court's finding of bad faith involved "largely a question of fact," reviewed for clear error, *Wilson v. Thompson*, 593 F.2d 1375, 1388 (5th Cir. 1979), which the court did not commit here. Because bad faith is generally difficult to prove even where it does exist, this Circuit has repeatedly been willing to consider diverse facts that can reveal a bad-faith prosecution in the *Younger* context. That's the right approach, as it ensures those who endure First Amendment and other constitutional violations through bad-faith prosecutions can turn to federal courts for relief. The Court should both reaffirm that precedent and affirm the district court's decision.

## I. The Purpose of *Younger* Abstention Is Served By Broadly Considering Different Types of Facts Showing Bad Faith.

The rationale of *Younger* abstention and its bad-faith exception clarify why it is so important for courts to broadly consider different types of facts—and evidence of those facts—probative of bad faith, even if the exception itself "is narrow and should be granted parsimoniously."

*Hefner*, 779 F.2d at 280. As a general matter, "a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014) (cleaned up). Thus, "federal courts are obliged to decide cases within the scope of federal jurisdiction," including First Amendment challenges. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013). The Supreme Court has advised that the default rule is that "federal courts ordinarily should entertain and resolve on the merits an action within the scope of a jurisdictional grant, and should not 'refuse to decide a case in deference to the States.'" *Id.* at 73 (quoting *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 368 (1989)).

*Younger* abstention is one limited exception to that rule. In *Younger v. Harris*, a California man sued to enjoin the state's criminal prosecution against him, alleging that it violated the First and Fourteenth Amendments. 401 U.S. 37, 38–39 (1971). After the district court granted the injunction, the Supreme Court reversed, holding that federal courts should abstain from "stay[ing] or enjoin[ing]" a parallel state criminal prosecution "except under special circumstances." *Id.* at 41. The Court held abstention is justified because of "Our Federalism," which it

described as "belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Id.* at 44. In particular, the Court recognized a "sensitivity to the *legitimate interests* of both State and National Governments." *Id.* (emphasis added). On the other hand, the Supreme Court recognized a court need not abstain from granting equitable relief against a pending state prosecution if a plaintiff shows bad faith or harassment. *Id.* at 49.

Just a few years later, in *Wilson v. Thompson*, this Court confirmed that because *Younger* abstention is justified only when the state's interest in bringing a criminal prosecution is legitimate, it does not apply to bad-faith prosecutions. 593 F.2d 1375 (5th Cir. 1979). The Court held the State "by definition does not have any legitimate interest in pursuing a bad-faith prosecution brought to retaliate for or to deter the exercise of constitutionally protected rights." *Id.* at 1383. Therefore, this Court held *Younger* abstention did not apply, and the default rule of federal courts exercising their jurisdiction controlled when "the state proceeding *itself* creates a chilling effect on speech because the state's legal machinery is being used in bad faith." *Id.*

7

Because *Younger* abstention deviates from the default rule of federal courts exercising jurisdiction over constitutional claims—and because it does not apply at all to criminal prosecutions brought with the motive to punish protected expression—courts should be vigilant in carefully examining any evidence of bad faith when alleged, whatever the source. Doing so accounts for the varied types of facts that can support an allegation of bad faith—especially at crucial early stages of a case, like seeking to preliminarily enjoin a constitutional violation. To do otherwise would ignore both the "exceptional," limited nature of *Younger* abstention, *Sprint*, 571 U.S. at 73, and *Younger*'s foundational requirement that there be a "comity rationale" based on "the State's legitimate pursuit of its substantive interests." *Wilson*, 593 F.2d at 1383.

## II. Historically, This Court and Others Have Considered Similar Facts as Proof of Bad Faith.

Under Fifth Circuit law, a plaintiff can show bad faith in two ways: by proving either that the state official brought the criminal prosecution "without hope of obtaining a valid conviction," *Perez v. Ledesma*, 401 U.S. 82, 85 (1971), or that they brought the prosecution "in retaliation for or to deter the exercise of constitutionally protected rights," *Wilson*, 593 F.2d at 1387. To show the latter, the plaintiff must prove the conduct at

issue was constitutionally protected "and that the state's bringing of the criminal prosecution is motivated *at least in part* by a purpose to retaliate against or deter that conduct." *Fitzgerald v. Peek*, 636 F.2d 943, 945 (5th Cir. 1981) (emphasis added). The burden then shifts to the state to prove "it would have decided to prosecute even had the impermissible purpose not been considered." *Id.* Under either method of showing bad faith, the Fifth Circuit has considered varied facts much like those the district court considered in this case to support a finding of bad faith.

## A.    Fifth Circuit precedent establishes that many types of facts can demonstrate bad-faith prosecution.

One of the earliest, and most extreme, cases where this Court applied *Younger*'s bad-faith exception is *Shaw v. Garrison*, where a Louisiana prosecutor obsessively pursued a local businessman, trying to prove he took part in President Kennedy's assassination. 467 F.2d 113 (5th Cir. 1972). This included criminally prosecuting the man for conspiracy based on testimony of one witness who had been "given sodium pentothal [considered by some to be a "truth serum"], subjected to hypnosis, and . . . interrogated." *Id.* at 115. After a jury found the businessman innocent, the prosecutor immediately charged him with perjury for testifying to his innocence during the trial. *Id.* A federal court

later enjoined the perjury prosecution on the grounds it was "brought 'in bad faith'," *id.*, and this Court affirmed.

In affirming the prosecutor's bad faith, the Court considered varied facts, including the seeming lack of any factual basis for bringing either the original prosecution or the perjury prosecution, as well as the prosecutor's unorthodox investigatory methods. *Id.* at 116–18. As relevant here, the Court noted the prosecutor deliberately staged the arrest to promote "publicity" and "held press conferences and issued press releases during the pretrial period." *Id.* at 118.

Later Fifth Circuit cases have ruled prosecutions were brought in bad faith under far less extreme facts. For example, in *Universal Amusement Company, Inc. v. Vance*, which consolidated several related appeals related to Texas obscenity statutes, an adult film theater operator sought to enjoin San Antonio police from repeatedly seizing his film projectors and criminally charging him and his employees for showing the adult film "Deep Throat." 559 F.2d 1286, 1293–94 (5th Cir. 1977), *on reh'g*, 587 F.2d 159 (5th Cir. 1978), *aff'd*, 445 U.S. 308 (1980), *and on reh'g*, 587 F.2d 176 (5th Cir. 1978). This Court affirmed the district court's "finding of harassment and prosecution in bad faith." *Id.*

at 1295. That holding turned largely on the police's shaky legal ground for seizing the film projectors at all, which relied on a Texas statute that prohibited "possessing a 'criminal instrument' which the statute define[d] as 'anything that is specially designed, made, or adapted for the commission of a crime.'" *Id.* at 1294. Because that statute was "clearly inapplicable to film projectors, which accommodate lawful movies as easily as obscene ones," this Court held the repeated seizures were not an "honest mistake" but evidenced bad faith. *Id.* at 1295. Thus, *Younger* abstention did not apply.

Similarly, in *Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d 82 (5th Cir. 1992), this Court found *Younger* abstention did not apply and federal courts could enjoin Dallas police from repeatedly seizing "peep show booths" and related video and computer equipment because there was proof of bad faith. *Id.* at 84. "[M]ost importantly," many of the seizures, arrests, and prosecutions in *Nobby Lobby* took place "after the [plaintiffs] filed suit, based on *Universal*, to enjoin such conduct." *Id.* at 88. The Court also noted that when Dallas police seized the equipment, they relied on the same Texas statute banning "criminal instruments" as the Court rejected in *Universal* because it was clearly inapplicable. *Id.* at 87.

**B.    The facts the district court considered in finding bad faith resemble those this Court and others have considered in earlier cases.**

The district court broke little, if any, new ground when it considered Netflix's evidence of District Attorney Babin's bad faith. In fact, the district court considered several facts showing bad faith that mirror those considered by this Court and others in previous cases.

For example, as the district court explained, the film *Cuties* clearly falls outside the scope of the child pornography statute under which Babin sought to prosecute Netflix. *See Netflix* 2022 WL 16948603 at *9–11. The district court observed that while the criminal statute prohibits "actual or simulated sexual intercourse" by "a child younger than 18 years of age," *Cuties* includes "no sex scenes." *Id.* at *10 (quoting Tex. Pen. Code § 43.25(d)). Likewise, the district court noted that while the Texas statute outlaws "lewd exhibition of the genitals, the anus, or any portion of the female breast below the top of the areola," the only nudity in the film was an *adult* "flash[ing] her breast for a fraction of a second," and so "her nudity cannot constitute child pornography."[2]  *Id.* at *10

---

[2] The district court also explained why, even if it accepted Babin's argument that "lewd exhibition of genitals" could include a minor's clothed genitals, Babin still lacked a colorable basis to believe that *Cuties* could qualify as child pornography. *Id.* at 14. *C.f.* Appellee's Br. 36 (discussing Texas's statement during oral argument in

(quoting Tex. Pen. Code § 43.25(a)(2)). To that end, the district court pointed out that "Babin received notice—well before he sought the New Indictments—that [the nude woman in the scene] was over eighteen at the time of filming." *Id.* Still, Babin chose to bring child pornography charges based on this scene.

This tracks the facts in *Universal* and *Nobby Lobby*, where this Court held bad faith could be inferred from the police criminally charging the plaintiffs under a statute that was "clearly inapplicable." *Universal*, 559 F.2d at 1295; *accord Nobby Lobby*, 970 F.2d at 87. Another similarity between the facts here and those in *Nobby Lobby* is that District Attorney Babin chose not to bring the New Indictments against Netflix until *after* Netflix filed its habeas petition, 400 days after the original indictment. *Netflix*, 2022 WL 16948603, at *12. In *Nobby Lobby*, this Court likewise considered that many prosecutions in that case "took place, in fact, after the appellees filed suit, based on *Universal*, to enjoin such conduct." 970 F.2d at 88. Both the district court here and the Court in *Nobby Lobby* rightly considered that response to be probative of bad faith. *See also*

---

*Ex Parte Lowry* that the "pubic area of a clothed child" is not "sexual conduct" under Tex. Pen. Code § 43.25).

*Wilson*, 593 F.2d at 1387 ("If the plaintiff shows that the State responded to his exercise of a constitutionally protected right by bringing the prosecution, he may of course rely upon an inference of impermissible purpose.").

The district court also considered that no other prosecutor in the country had brought child pornography charges based on the film *Cuties*, despite its nationwide streaming availability. *Netflix*, 2022 WL 16948603, at *11. Indeed, the nexus between *Cuties* and Tyler County, Texas, is tenuous at best: Beyond the ability of any Tyler County Netflix subscriber to stream *Cuties* in the jurisdiction, there is *no* connection. Even though every jurisdiction in the nation has that connection to the film, only District Attorney Babin sought to file charges. That echoes the facts in *Shaw v. Garrison*, where this Court found "bad faith and harassment" in part because of "a 'serious question concerning the basis for Garrison's decision' to investigate the assassination of President Kennedy." 467 F.2d at 116. Specifically, the Court found it "strange indeed" that a Louisiana prosecutor would investigate the assassination, which occurred in Dallas, "merely because he disagreed with the findings of the Warren Commission and [assassin Lee Harvey] Oswald had spent

14

some time in New Orleans." *Id.* (citation and internal quotation marks omitted). At least in *Shaw*, Oswald had spent time in the prosecutor's jurisdiction. But here, there is no evidence of any Netflix staff or *Cuties* cast members ever spending time in Tyler County.

The district court also noted that District Attorney Babin "issued a press release where he expressed his motivation for seeking the charge." *Netflix*, 2022 WL 16948603, at *1. While the district court did not specifically weigh this factor in its analysis, this Court and others have considered press releases related to controversial First Amendment prosecutions as probative of bad faith. *See, e.g.*, *Shaw*, 467 F.2d at 118 ("He held press conferences and issued press releases during the pretrial period."); *see also Krahm v. Graham*, 461 F.2d 703, 705 (9th Cir. 1972) (affirming bad-faith finding where mayor launched a public "anti-pornography campaign" to "influence the tenor of the community" against sellers of allegedly obscene books and magazines).

In sum, the district court took a broad eye toward the kinds of facts that can establish bad faith, as courts can and must to uphold *Younger*'s exception and ensure federal courts exercise their jurisdiction to put a swift end to bad-faith prosecutions that violate the Constitution.

### III.  Babin's Proffered Evidence of Good Faith Does Not Render the District Court's Finding of Bad Faith Clearly Erroneous.

District Attorney Babin's brief cites evidence that he was acting in good faith during the prosecution of the various criminal indictments, insisting his polite behavior erases the evidence of bad faith the district court relied on. For example, he notes he "did not impose significant pretrial burdens on Netflix," that "Netflix does not allege that Babin . . . [held] unnecessary press conferences or [sought] undue publicity," and that "interactions between counsel were amicable." Appellants' Br. at 16.

These arguments are flawed. *First*, if District Attorney Babin brought the New Indictments in bad faith, that very act violated the Constitution—whether or not he was polite to opposing counsel before or after doing so. Indeed, civility once trial and grand jury proceedings have started is a baseline expectation for all members of the legal profession. It does not purge the taint of an unconstitutional motive for indicting Netflix. Any rule otherwise would upset federal courts' obligation to exercise their jurisdiction to enjoin bad-faith constitutional violations.

*Second*, to *amicus*'s knowledge, no court has required imposing "significant pretrial burdens" or "seeking undue publicity" for a showing

16

of bad faith. And Babin fails to cite a single case supporting the proposition. Instead, those are facts which *can* show bad faith, if present—but they are hardly dispositive. For example, neither *Universal* nor *Nobby Lobby* involved evidence of burdensome discovery requests or a self-interested publicity campaign by the prosecutor. Rather, this Court found evidence of bad faith largely from the district attorney repeatedly pursuing charges based on a statute that clearly did not apply—the exact scenario here. And even in *Shaw v. Garrison*, where there was evidence the prosecuting attorney deliberately sought media attention to raise his profile and sell more copies of his book, that evidence was not dispositive, but merely proved one of several facts that supported a finding of bad faith. 467 F.2d at 118.

Ultimately, weighing and balancing competing evidence is a factual determination that this Court will not overturn unless it was clearly in error, and that includes whether a prosecution was in bad faith. *See* Fed. R. Civ. P. 52(a); *accord Nobby Lobby*, 970 F.3d at 87. The scant evidence Babin provides of his good behavior after seeking the indictments, which the district court considered and rejected, does not come close to meeting this standard.

17

**CONCLUSION**

This Court should affirm the district court's finding and reaffirm that courts in this Circuit should broadly consider a range of facts that support a finding of bad faith in the *Younger* context.

Dated: June 7, 2023                    /s/ JT Morris

                                       JT MORRIS
                                       FOUNDATION FOR INDIVIDUAL
                                         RIGHTS AND EXPRESSION
                                       700 Pennsylvania Avenue SE
                                       Suite 340
                                       Washington, DC 20003
                                       (215) 717-3473
                                       jt.morris@thefire.org

## CERTIFICATE OF SERVICE

The undersigned certifies that on June 7, 2023, an electronic copy of the Brief of *Amicus Curiae* Foundation for Individual Rights and Expression in Support of Plaintiff-Appellee and Affirmance was filed with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit using the CM/ECF system. The undersigned also certifies all parties in this case are represented by counsel who are registered CM/ECF users and that service of the brief will be accomplished by the CM/ECF system.

Dated: June 7, 2023          /s/ JT Morris

                             JT MORRIS
                             FOUNDATION FOR INDIVIDUAL
                               RIGHTS AND EXPRESSION

## Certificate of Compliance With Type-Volume Limit

1. This document complies with the word limit of Fed. R. App. P. 29(a)(5) because, excluding the parts of the document exempted by the Fed. R. App. P. 32(f): this document contains 3,566 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook and 12-point Century Schoolbook for footnotes.

Date: June 7, 2023            /s/ JT Morris
                             JT Morris
                             FOUNDATION FOR INDIVIDUAL
                                RIGHTS AND EXPRESSION