No. 22-40786

# In the United States Court of Appeals for the Fifth Circuit

NETFLIX, INCORPORATED,

*Plaintiff-Appellee,*

*v.*

LUCAS BABIN,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Eastern District of Texas, Lufkin Division

## REPLY BRIEF FOR APPELLANT

JOHN SCOTT
Provisional Attorney General

BRENT WEBSTER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

LANORA C. PETTIT
Principal Deputy Solicitor General

KATHRYN M. CHERRY
Assistant Solicitor General
Kathryn.Cherry@oag.texas.gov

Counsel for Defendant-Appellant

# TABLE OF CONTENTS

Page

Table of Authorities ........................................................................... iii

Introduction .......................................................................................... 1

Argument ............................................................................................... 2

   I.   The Grand Jury's Finding of Probable Cause Forecloses Netflix's
       Challenges to the Merits of the Prosecution ............................... 2

      A.  Because the grand jury found probable cause, Babin did not
           indict Netflix without hope of a conviction ......................... 2

      B.  The district court erred in disregarding the existence of
           probable cause in finding that Babin's prosecution was
           retaliatory ............................................................................... 4

      C.  Netflix and the district court's own analysis of the merits
           does not upset the grand jury's finding ................................ 4

  II.  Netflix Failed to Show that Babin Intended to Retaliate for
       Constitutionally Protected Conduct ............................................ 6

      A.  Netflix cannot show that the mere existence of Netflix's
           habeas petition established retaliatory animus ..................... 8

      B.  Netflix cannot show that its continuing to stream *Cuties*
           establishes retaliatory animus ............................................... 9

      C.  Babin's exercise of prosecutorial discretion does not establish
           retaliatory animus ............................................................... 10

  III.  The District Court Erred in Rejecting *Younger* Abstention ...................... 15

      A.  State court criminal procedures suffice to protect Netflix's
           rights ..................................................................................... 15

      B.  Netflix's claim creates an unseemly race to the courthouse on
           an issue of state law being litigated in Texas's highest
           criminal court ...................................................................... 17

  IV.  Netflix's Most "Salient" Facts Are Either Irrelevant or
       Inaccurate ..................................................................................... 19

  V.  Babin Did Not Waive the Arguments He Made in His Opening
       Brief .............................................................................................. 22

Conclusion .......................................................................................... 24

Certificate of Service................................................................................ 25

Certificate of Compliance ....................................................................... 25

# Table of Authorities

Page(s)

**Cases**

*Abney v. United States*,
   431 U.S. 651 (1977) ..................................................................16

*Ashcroft v. ACLU*,
   535 U.S. 564 (2002) ........................................................ 4, 5, 20

*Atemnkeng v. Barr*,
   948 F.3d 231 (4th Cir. 2020) .................................................. 23

*Batyukova v. Doege*,
   994 F.3d 717 (5th Cir. 2021) .................................................... 7

*Beech Aircraft Corp. v. Rainey*,
   488 U.S. 153 (1988) ................................................................ 23

*Bice v. La. Pub. Def. Bd.*,
   677 F.3d 712 (5th Cir. 2012) ..................................................16

*Coleman v. Dretke*,
   409 F.3d 665 (5th Cir. 2005) .................................................. 20

*Columbia Basin Apartment Ass'n v. City of Pasco*,
   268 F.3d 791 (9th Cir. 2001) .................................................. 18

*Costello v. United States*,
   350 U.S. 359 (1956) ......................................................... 2, 3, 4

*Daves v. Dallas County*,
   64 F.4th 616 (5th Cir. 2023) .............................................15-16

*Fitzgerald v. Peek*,
   636 F.2d 943 (5th Cir. 1981) .............................................. 3, 4

*Force v. Facebook, Inc.*,
   934 F.3d 53 (2d Cir. 2019) ......................................................19

*Forte v. Wal-Mart Stores, Inc.*,
   780 F.3d 272 (5th Cir. 2015) .................................................. 23

*Gates v. Strain*,
   885 F.3d 874 (5th Cir. 2018) .................................................... 2

*Hanna v. Lynch*,
   644 F. App'x 261 (4th Cir. 2016) .......................................... 23

*Kaley v. United States*,
   571 U.S. 320 (2014) ................................................................11

*Langley v. Prince,*
    926 F.3d 145 (5th Cir. 2019) ........................................................... 23

*Lewellen v. Raff,*
    851 F.2d 1108 (8th Cir. 1988) .......................................................... 4

*Little v. Doguet,*
    No. 20-30159, 2023 WL 4101428 (5th Cir. June 21, 2023) ................ 16

*Ex parte Lowry,*
    639 S.W.3d 151 (Tex. App.—Houston [1st Dist.] 2021, pet.
    granted) ........................................................................ 5, 17, 18

*Montgomery v. State,*
    369 S.W.3d 188 (Tex. Crim. App. 2012) .......................................... 11

*New York v. Ferber,*
    458 U.S. 747 (1982) ......................................................................... 11

*Okorie v. Miss. Bd. of Med. Licensure,*
    739 F. App'x 301 (5th Cir. 2018) ...................................................... 8

*Ex parte Perry,*
    483 S.W.3d 884 (Tex. Crim. App. 2016) .......................................... 17

*Phelps v. Hamilton,*
    59 F.3d 1058 (10th Cir. 1995) ........................... 2, 7, 8, 13, 14, 24

*Smith v. Hightower,*
    693 F.2d 359 (5th Cir. 1982) ................................................ 4, 8, 23

*State v. Bolles,*
    541 S.W.3d 128 (Tex. Crim. App. 2017) .......................................... 22

*State v. Mungia,*
    119 S.W.3d 814 (Tex. Crim. App. 2003) .......................................... 16

*State v. Rosenbaum,*
    910 S.W.2d 934 (Tex. Crim. App. 1995) .......................................... 16

*Swindol v. Aurora Flight Scis. Corp.,*
    805 F.3d 516 (5th Cir. 2015) ........................................................... 20

*Tex. Democratic Party v. Abbott,*
    961 F.3d 389 (5th Cir. 2020) ........................................................... 17

*Twitter, Inc. v. Taamneh,*
    143 S. Ct. 1206 (2023) ..................................................................... 19

*United States v. Brown,*
    298 F.3d 392 (5th Cir. 2002) ......................................................... 8, 9

*United States v. Dost*,
   636 F. Supp. 828 (S.D. Cal. 1986) ............................................................... 18, 19
*United States v. Goodwin*,
   457 U.S. 368 (1982) ........................................................... 8-9, 12, 13
*United States v. Saltzman*,
   537 F.3d 353 (5th Cir. 2008) ................................................... 7, 8, 12, 13
*United States v. Williams*,
   504 U.S. 36 (1992) ............................................................ 3, 10, 11, 14
*United States v. Williams (II)*,
   553 U.S. 285 (2008) ........................................................... 19-20
*Villarreal v. City of Laredo*,
   44 F.4th 363 (5th Cir. 2022) ............................................................... 24
*Weinhoffer v. Davie Shoring, Inc.*,
   23 F.4th 579 (5th Cir. 2022) ............................................................... 21
*Wightman v. Tex. Sup. Ct.*,
   84 F.3d 188 (5th Cir. 1996) ............................................................... 10
*Winfield v. Dorethy*,
   871 F.3d 555 (7th Cir. 2017) ............................................................... 23
*Zivotofsky ex rel. Zivotofsky v. Kerry*,
   576 U.S. 1 (2015) ............................................................... 23

**U.S. Const. and Statutes:**

U.S. Const. amend. I ............................................................... 19
Tex. Code of Crim. Proc. art. 28.01 ............................................................... 16
Tex. Penal Code:
   § 43.25 ........................................................... 4, 5, 7, 11, 13, 14, 17, 18
   § 43.25(g) ............................................................... 14
   § 43.262 ........................................................... 5, 7, 11, 17, 18

**Other Authorities:**

@netflix, Twitter (Aug. 20, 2020, 11:36 AM),
   https://tinyurl.com/TwitterApology ............................................................... 20
17A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper,
   *Federal Practice and Procedure* § 4241 (3d ed. 1998) ............................................. 17
*Cuties*, IMDb, https://tinyurl.com/CutiesCast (last visited June 28,
   2023) ............................................................... 15

*Cuties*, IMDb, https://www.imdb.com/title/tt9196192/ (last visited
   July 5, 2023) ................................................................................. 6, 20

*Cuties Official Trailer*, Netflix, YouTube (Aug. 18, 2020),
   https://tinyurl.com/OriginalSynopsis ............................................. 21

*Cuties Official Trailer*, Netflix, YouTube (Aug. 18, 2020),
   https://www.youtube.com/watch?v=M0O7lLe4SmA .................................... 21

Letter from Dave Yost, Ohio Att'y Gen., to Reed Hastings (Sept. 14,
   2020), https://tinyurl.com/OHAGCuties ......................................... 22

*School of Rock*, IMDb, https://www.imdb.com/title/tt0332379/ (last
   visited July 5, 2023) ...................................................................... 6

# Introduction

Enjoining a state prosecution because the prosecutor acted in bad faith is a significant encroachment on state sovereignty requiring strong evidence. But in this case, the district court relies on unsupported facts and assumptions that penalize Babin for acting within his prosecutorial discretion. In doing so, it burdens prosecutors with presenting exculpatory information to a grand jury, joining criminal offenses, and not just requesting but crediting exculpatory evidence from the defendant—all before the case gets off the ground. The district court's application of impermissible assumptions and erroneous legal standards when determining whether *Younger's* exceptions apply deprives the decision below of the protection of clear-error review.

The district court's decision to allow Netflix to bring its constitutional claims to federal court is particularly inappropriate because the federal court enters itself into a race to see who can interpret state penal statutes first: it or the state courts. There is no need to do so, as Texas law provides both pre- and post-trial opportunities for Netflix to raise its federal constitutional claims. Because the district court's finding of bad faith is wrong as a matter of law, and Netflix has an adequate remedy to challenge the indictments in state court, declining *Younger* abstention is an abuse of discretion.[1]

---

[1] Babin's failure to repeat its original arguments or respond to particular statements in Netflix's response should not be deemed a waiver or concession.

A<span style="font-variant: small-caps">RGUMENT</span>

## I.   The Grand Jury's Finding of Probable Cause Forecloses Netflix's Challenges to the Merits of the Prosecution.

As Babin explained (at 31), the existence of probable cause forecloses Netflix's assertion of bad faith on the merits and regarding *Younger* abstention. "Ordinarily, a bad faith prosecution will not be predicated upon probable cause." *Phelps v. Hamilton*, 59 F.3d 1058, 1064 n.12 (10th Cir. 1995). A claim of prosecutorial misconduct does not lie in the presence of "[a]n indictment returned by a legally constituted and unbiased grand jury, . . . if valid on its face." *Costello v. United States*, 350 U.S. 359, 363 (1956). Because Netflix does not assert a cognizable challenge to the face of the indictment, the existence of probable cause is inconsistent with the district court's holding (at ROA.1643) that Babin brought his prosecution in bad faith.

### A.   Because the grand jury found probable cause, Babin did not indict Netflix without hope of a conviction.

Contrary to the district court's finding, the existence of probable cause as found by the grand jury *conclusively* forecloses Netflix's position that Babin "proceed[ed] 'without hope of obtaining a valid conviction.'" ROA.1641 (quoting *Gates v. Strain*, 885 F.3d 874, 881 (5th Cir. 2018)). The attempts by Netflix (at 32-38) and the district court (at ROA.1643) to cast doubt on the grand jury's finding of probable cause cannot overcome this precedent. For example, Netflix's complaints (at 11, 43-44) that Babin did not force the jury to watch the entire film challenges the indictment for incompetent evidence, which is foreclosed by *Costello*, 350 U.S. at 363. In fact, to the extent watching *Cuties* in its entirety during the prosecution's presentation would somehow be exculpatory, Netflix's accusation that Babin failed to present such

2

allegedly exculpatory information to the jury is the exact claim that was raised, and denied, in *United States v. Williams*, 504 U.S. 36, 55 (1992). The Supreme Court expressly rejected efforts by some courts "to use a revitalized prosecutorial misconduct doctrine to circumvent *Costello's* prohibition against directly evaluating the sufficiency of the evidence presented to the jury." *Id*. at 54 n.8 (cleaned up). For good reason: "[a] complaint about the quality or adequacy of the evidence can always be recast as a complaint that the prosecutor's presentation [to the grand jury] was 'incomplete' or 'misleading.'" *Id*. at 54. "Review of facially valid indictments on such grounds 'would run counter to the whole history of the grand jury institution[,] [and] [n]either justice nor the concept of a fair trial requires [it].'" *Id*. at 54-55 (alterations in original) (quoting *Costello*, 350 U.S. at 364). As a result, the district court erred as a matter of law when it accepted one of Netflix's two defenses to *Younger* abstention—that Babin's prosecution of Netflix was in bad faith because there was no hope of a conviction.

Netflix argues (at 32, 40-41) that under *Fitzgerald v. Peek*, its bad-faith-prosecution claim lies even though grand jury found probable cause. 636 F.2d 943, 945 (5th Cir.) (per curiam). But that exception applies only when the state-court criminal defendant shows that the prosecution is retaliating against constitutionally protected conduct. *Id.* And even for that type of claim, the district court's failure to consider the grand jury's finding of probable cause before finding that the prosecutor's conduct was retaliatory is reversible error.

### B.  The district court erred in disregarding the existence of probable cause in finding that Babin's prosecution was retaliatory.

Unlike a claim that a prosecution was doomed to fail, this Court has held that the existence of probable cause does not necessarily disprove a retaliatory motive, such as when "improper influence was exerted on the prosecutor by certain judges to seek the indictments," *id.* at 943, or the "unlikel[iness]" of the indictments suggested some undue pressure by the district attorney, *Smith v. Hightower*, 693 F.2d 359, 369 (5th Cir. 1982). Nonetheless, this Court has held that "the strength of the evidence and seriousness of the charges should be considered in determining if retaliation or bad faith exists." *Id.* And "it is erroneous for a district court to refuse to consider evidence as to whether the prosecutors entertained a reasonable expectation of obtaining a conviction." *Lewellen v. Raff*, 851 F.2d 1108, 1109-10 (8th Cir. 1988) (per curiam). The district court's opinion, however, disregards the grand jury's finding of probable cause entirely.

### C.  Netflix and the district court's own analysis of the merits does not upset the grand jury's finding.

Rather than accepting the grand jury's finding, the district court employs its own review of the merits to dismiss the existence of probable cause. But not only is that prohibited by *Costello*, the court's conclusion also relies on unsupported facts and erroneous legal standards that cannot hold up under clear error, much less de novo, review.

Whether there was probable cause to think *Cuties* meets the elements of section 43.25 is determined by community standards. *Ashcroft v. ACLU*, 535 U.S. 564, 581 (2002) (plurality op.). If anything, Netflix's own experience in promoting *Cuties*

demonstrates that the community could (and did) view the film as pornographic. *Infra* p.20. To the extent Netflix argues (*e.g.*, at 6, 35) that Babin must have acted in bad faith because no other law-enforcement officials have prosecuted Netflix, that too misstates the legal standard. The Supreme Court has long accepted that "[t]here is no constitutional barrier" to prosecutors in one community determining that material is obscene even if prosecutors view that same material as simply risqué in another. *Ashcroft*, 535 U.S. at 581 (plurality op.). When Netflix's "*audience is comprised of different communities with different local standards*," Netflix "ultimately bears the burden of complying with the prohibition[s]" of each. *Id.* (emphases omitted).

Netflix argues (at 28) and the district court held (at ROA.1650-51) that *Ex parte Lowry* should have indicated to Babin that his case was meritless. 639 S.W.3d 151 (Tex. App.—Houston [1st Dist.] 2021, pet. granted). But *Lowry* expressly limited its analysis to the part of the statute before it, which involved possession, not promotion, of unlawful material. *Id.* at 161; *see* ROA.576. In addition, the court in *Lowry* found it "[n]otabl[e]" that unlike the definition of sexual conduct in section 43.25, which included "lewd exhibition of the genitals," section 43.262 required only "lewd exhibition of the pubic area." 639 S.W.3d at 163-64. Section 43.262 prohibited more than child pornography or obscenity, and therefore was held to be a content-based restriction on protected speech. *Id.* at 164-65. Moreover, *Lowry* (decided by the First Court of Appeals district) was not controlling where Netflix was indicted (the Twelfth Court of Appeals district). And the State's petition for review was already pending before the Court of Criminal Appeals ("CCA"). ROA.1433.

The district court also determined, by applying a type of hybrid-judicial notice based on assumptions and unsupported facts, that Babin *should* have known the prosecution would not succeed. The court found that because Babin had been in the film *School of Rock*, he should have understood that the actresses were not being forced to engage in sexual conduct. ROA.1646; *but see* ROA.2218 (sealed record). But that conclusion does not follow. There is no finding or even assertion that *School of Rock*—or any other film that Babin may have ever participated in—even approximated the themes and images in *Cuties*. Moreover, Netflix offered no evidence, and the court certainly points to none, from which a finding could be made that every studio and every film follows the same rules. *Cuties* was filmed in Paris by Cinema Bien Ou Bien Productions. *Cuties*, IMDb, https://www.imdb.com/title/tt9196192/ (last visited July 5, 2023). *School of Rock* was filmed in New Jersey and New York by Paramount Pictures, *School of Rock*, IMDb, https://www.imdb.com/title/tt0332379/ (last visited July 5, 2023). Netflix provided no evidence that the steps taken in producing a film overseas were similar to those Babin had experienced or fulfilled the legal requirements of the State of Texas. The district court's reliance on those alleged facts and the legal conclusions it drew from them were clearly erroneous.

## II. Netflix Failed to Show that Babin Intended to Retaliate for Constitutionally Protected Conduct.

Netflix's other ground for claiming an exemption from *Younger* abstention—that Babin retaliated against it for its constitutionally protected conduct—is equally flawed. Rather than engaging with Babin's evidence that there was no *actual* hostility

from Babin during the state court proceeding (at 15-17), Netflix counters only that a finding of retaliation "requires no proof of 'hostility.'" Resp. 29. To the contrary, "because such a presumption [of retaliatory animus] may operate in the absence of any proof of an improper motive," the bar for proving retaliatory animus is high, and "courts will apply it only where there exists a realistic likelihood of vindictiveness." *United States v. Saltzman*, 537 F.3d 353, 359 (5th Cir. 2008) (cleaned up). Netflix has not met that burden merely by pointing to the filing of its habeas petition (at 11), the fact that it continued to stream *Cuties* (at 35), or how it feels it was disadvantaged by Babin's exercise of his prosecutorial discretion (at 28-29).

In establishing retaliatory conduct, "the critical inquiry is not whether [the plaintiff] engaged in some protected activity," but "whether the prosecutor sought to limit [Netflix's] ability to conduct constitutionally protected speech by these criminal prosecutions." *Phelps*, 59 F.3d at 1068. The prosecution must be "substantially motivated against" the "exercise of constitutionally protected activity." *Batyukova v. Doege*, 994 F.3d 717, 730 (5th Cir. 2021). But preventing Netflix from challenging section 43.262 in habeas did not prevent Netflix from resorting to other pre-trial remedies. *Supra* III.A. Nor would prosecuting Netflix under section 43.25 stop Netflix from streaming *Cuties*. *See* Resp. 35. Indeed, the prosecution did *not* stop Netflix from streaming *Cuties* in the U.S., which continues to appear on the platform to this day.

In the face of the common-sense point that Babin had nothing to gain from his allegedly retaliatory conduct, Netflix cannot show Babin's main purpose was retaliation. Netflix argues (at 25 n.15) that the "at least in part" standard employed by the

district court, ROA.1647, is the correct one at the preliminary injunction stage, but Netflix is misreading *Smith*, 693 F.2d at 367. In *Smith*, the Court explicitly held that "[i]n stating that the plaintiff must prove retaliation exists before a *preliminary injunction* will be granted, the *Wilson* Court contemplated that the plaintiff must prove retaliation was a *major motivating factor* and played a *prominent role* in the decision to prosecute." *Id.* (emphases added); *see also Okorie v. Miss. Bd. of Med. Licensure*, 739 F. App'x 301, 302 (5th Cir. 2018) (per curiam); *but see Phelps*, 59 F.3d at 1067. The footnote on which Netflix relies (at 25 n.15) explains why *Wilson* may have gone off course in using the "at least in part" language, but it does not establish the more lenient legal standard. *See Smith*, 693 F.2d at 367 n.19.

## A. Netflix cannot show that the mere existence of Netflix's habeas petition established retaliatory animus.

Netflix's retaliation claim, which hinges entirely on the district court's conclusion that Babin would seek to retaliate against it for simply *filing* a petition for habeas corpus, *see* Resp. 11; ROA.1647, or for "continuing to stream *Cuties*," ROA.1561, does not "establish a realistic likelihood of vindictiveness," *Saltzman*, 537 F.3d at 359. Some pre-trial actions are simply "not consequential enough to provoke a vindictive response." *United States v. Brown*, 298 F.3d 392, 406 (5th Cir. 2002).

This case varies greatly from those in which courts found a suggestion of retaliatory conduct for the simple reason that in those the defendants at least *succeeded* in challenging their prosecutions. For example, in *United States v. Goodwin*, the Supreme Court suggested a prosecutor's increase in charges after a defendant won a new trial could be evidence of retaliation for a defendant's exercise of his right to

appeal. 457 U.S. 368, 381 (1982). But Netflix provides no precedent supporting a presumption that a prosecutor sought to retaliate against a criminal defendant for simply filing a motion. To the contrary, this Court held that "prosecutors could not have been inconvenienced" by the dismissal of an indictment based on the Speedy Trial Act because it resulted only in a dismissal without prejudice. *Brown*, 298 F.3d at 406. And in *Goodwin*, the Supreme Court rejected a presumption of retaliation based on the defendant having requested a jury trial instead of a bench trial. 457 U.S. at 383.

So too here. At most, the petition for pre-trial habeas corpus would result in a dismissal of the indictment. *See* Br. 38. Because jeopardy had not yet attached, Babin could reindict and thereby "cure perceived deficiencies in the original indictment that he might not have been allowed to correct had trial proceeded as scheduled." *Brown*, 298 F.3d at 406; Br. 39.

## B.  Netflix cannot show that its continuing to stream *Cuties* establishes retaliatory animus.

Nor is it sensible for Netflix to push the argument the district court did not address, that Babin was retaliating for Netflix "*continuing* to stream *Cuties* on its service." ROA.1561 (emphasis added). Babin knew by the time he brought the new charges that prosecution had less impact on Netflix's promotion of *Cuties* than did feedback from its subscribers. *See infra* p.20. It would defy common sense to presume without proof (of which there is none) that Babin nonetheless thought indicting under a different penal statute would suddenly cause Netflix to change course.

## C. Babin's exercise of prosecutorial discretion does not establish retaliatory animus.

The trial court also erred in concluding (at ROA.1644-48) that Babin's discretionary charging decisions illustrate his bad faith. This Court has explained that the bad-faith exception to *Younger* abstention is not applicable when the prosecutor's conduct demonstrates "adherence to standard procedure and compliance with statutory requirements." *Wightman v. Tex. Sup. Ct.*, 84 F.3d 188, 191 (5th Cir. 1996). Yet the trial court found and Netflix claims Babin acted in bad faith because he (1) failed to provide an exculpatory narrative to the grand jury, ROA.28-29; (2) sought charges with a greater penalty after a constitutional defect was alleged in his original indictment, ROA.1647-48; (3) split the charges across multiple indictments, Resp. 28-29, 29 n.19; and (4) declined to take a defendant's claim of innocence at face value, ROA.1645. Because Babin was under no obligation to do any, let alone all, of those things, the court's fact-finding that his choice not to do so demonstrated bad faith impermissibly imposes court-made rules on decisions long left to a prosecutor's discretion.

1.    Babin's alleged failure to *show* (rather than provide, which he did) the entire *Cuties* film to the grand jury is immaterial. *First*, Babin was not obliged to play the entire film for the grand jury. The Supreme Court in *Williams* affirmed that an indictment is valid even if "the *grand jury itself* chooses to hear no more evidence than that which suffices to convince it an indictment is proper." 504 U.S. at 53. The Court rejected Williams's attempt to fault the prosecutor for not introducing all the documents holding allegedly exculpatory evidence, stating, "[i]f the grand jury has no

obligation to consider all 'substantial exculpatory' evidence, we do not understand how the prosecutor can be said to have a binding obligation to present it." *Id.* The district court's holding goes beyond requiring exculpatory information, faulting Babin for not presenting all "*relevant*" information to the grand jury. ROA.1649 (emphasis added). But that is no more than a complaint that "the prosecutor's presentation was 'incomplete' or 'misleading,'" which was also rejected in *Williams*. 504 U.S. at 54. The district court's holding exposes prosecutors to a presumption of misconduct even if their actions were consistent with the traditional "rules of grand jury procedure." *Id.* at 50. Such a rule "alter[s] the traditional relationships between the prosecutor, the constituting court, and the grand jury itself," and exceeds the power of a federal court. *Id.*

*Second*, contrary to Netflix's contentions (at 43-44), because the 43.262 indictment predates the habeas corpus petition that allegedly triggered the retaliation, Babin's showing to the grand jury issuing that indictment is irrelevant. If any scene involved a child engaging in sexual conduct under section 43.25, any supposed artistic value is irrelevant, and Texas may constitutionally prohibit it. *New York v. Ferber*, 458 U.S. 747, 761 (1982). Thus, even if Babin had to present exculpatory evidence before a grand jury—and he did not, *Kaley v. United States*, 571 U.S. 320, 328 (2014)—Babin was under no obligation to explain the context of pornographic images of children before seeking the section 43.25 indictments. Such information is not exculpatory. ROA.1444; *see Montgomery v. State*, 369 S.W.3d 188, 192-95 (Tex. Crim. App. 2012).

**2.**    Babin was also permitted to seek different charges after Netflix challenged the constitutionality of the initial indictment. *Contra* Resp. 28 (accusing Babin of "upp[ing] the ante"). As this Court has recognized, although prosecutors may not penalize a criminal defendant for exercising his right to trial, "the inquiry into prosecutorial conduct in a pretrial context may be distinguished from conduct occurring thereafter." *Saltzman*, 537 F.3d at 360. The district court failed to honor that distinction when it found Babin was motivated by animus because he changed his charging decision after the initial indictment. ROA.1647.

When considering a prosecutor's pretrial charging decisions, the Supreme Court has held that "[a]n initial decision should not freeze future conduct." *Goodwin*, 457 U.S. at 382. The Court warned that "[t]here is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting." *Id.* at 381. "In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he may simply come to realize that information possessed by the State has a broader significance." *Id.*

As the Court explained, inferring animus from strategic evolution makes little sense:

> [A] defendant before trial is expected to invoke procedural rights that inevitably impose some 'burden' on the prosecutor. Defense counsel routinely file pretrial motions to suppress evidence; to challenge the sufficiency of an indictment; to plead an affirmative defense; to request psychiatric services; to obtain access to government files; to be tried by jury.

*Id.* Because "invocation of procedural rights is an integral part of the adversary process in which our criminal justice system operates," "[i]t is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter." *Id.*

This rule applies even when "the Government had full knowledge of the facts in the case but did not include any of the additional charges in the original criminal complaint or indictment." *Saltzman*, 537 F.3d at 361. After all, "the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution." *Id.* Because the prosecutor is still learning about the case at the time of the initial indictment, the Supreme Court discourages courts from finding that a prosecutor's increase in charges during the pre-trial stage signifies bad faith. *Goodwin*, 457 U.S. at 381.

**3.** It was also within Babin's discretion to present each count in a separate indictment, rather than joining them in one. One of Netflix's key points in the brief is that Babin brought four indictments against Netflix under section 43.25. *E.g.*, 28-29, 29 n.19. But the district court made no finding concerning those indictments. And contrary to Netflix's *explicit* representation (at 28), Babin never said that he intended to try each indictment separately, even when pressed by Netflix's counsel, ROA.1220 (112:6-17), 1242 (69:22)-1243 (70:9).

Harassment based on "an excessive number of prosecutions" requires "both the existence of a substantial number of prosecutions and that a reasonable prosecutor would not have brought such multiple charges under similar circumstances." *Phelps*, 59 F.3d at 1066. "[M]ere numbers alone do not tell the full story." *Id.*

"[E]ven multiple prosecutions may not be overly burdensome if the prosecutions are, or are likely to be, consolidated into a single trial." *Id.* The question is whether Babin could have conceivably believed he would wear Netflix down "with the financial and emotional expense of multiple trials" or was there some reasonable factor— such as distinctions between how some actresses were shown in the film compared to others—that explained the use of multiple indictments. *Id.* at 1066-67.

4.    Nor does Netflix cite authority for the proposition that Babin was obligated to credit its defense regarding the actress playing "Sweety Swaag" (Jane Doe). *Contra* ROA.1645. Although section 43.25 criminalizes only activity involving children, Babin did not need to prove her age to get an indictment: a jury's visual inspection suffices to find probable cause that Jane Doe was a minor. *See* Tex. Penal Code § 43.25(g). The grand jury found such cause. ROA.2237 (sealed). Babin did not have, and was not obligated to find, any official identification for Jane Doe (which would likely *not* be found on Google, *but see* Resp. 12–13). *See Williams*, 504 U.S. at 51.

As Babin explained (at 23), although Netflix claimed that Jane Doe was an adult in a meeting concerning the section 43.262 indictment, ROA.1645, the company did not provide official evidence in support of its claim until November 4, 2022, ROA.1602. And Netflix admitted that it *could* not have provided such information before September 14, 2022, so Babin's asking for proof of her age would have been futile. ROA.1601–02. In fact, as Babin informed the district court (at ROA.564-65), the woman who, according to Netflix, played the Sweety Swaag character (Manola Aillaud) is not the person identified in the credits or on IMDb. *Compare* ROA.1312, 1801-02, 1602 (concerning "Aillaud"), *with* Ex. 1 (1:32:16) (credits scene listing

Canelle Brival, "Paloma," "Evarista," and "Arasian").[2] Thus, the record reflects that as of March 2022, Babin still did not know for certain that Jane Doe was an adult, and given the conduct of the underage actresses in *Cuties*, he had no reason to believe a flash of nudity guaranteed the presence of an adult actress. ROA.105-18.

## III. The District Court Erred in Rejecting *Younger* Abstention.

Netflix does not dispute that the typical *Younger* factors would require abstention. Netflix is undoubtedly engaged in a state criminal proceeding. It has other remedies sufficient to protect its rights. And the State has a strong interest in enforcing its penal code, especially where children are concerned. Netflix complains about its state-court remedies and challenges the importance of having a state-court interpretation of a state law, but neither objection weathers close scrutiny.

### A.  State court criminal procedures suffice to protect Netflix's rights.

To the extent Netflix's comments about the absence of a pre-trial habeas remedy are meant to show it has no adequate remedy in state court, that assertion fails. *E.g.,* Resp. 11. Because there is an "ongoing state judicial proceeding," and "the [S]tate has an important interest" in carrying out that proceeding to combat harm to children, *Younger* "*requires* federal court abstention" if "the plaintiff has 'an adequate opportunity in the state proceedings to raise constitutional challenges.'" *Daves v.*

---

[2] IMDb provides the name "Canelle Brival" for the Sweety Swaag character, which matches one of the names of actresses playing Sweety Swaag in the film's credits, but not Netflix's information—neither the worksheet it claimed sufficed as proof or the passport it eventually acquired, both of which were for "Manola Aillaud." *See Cuties*, IMDb, https://tinyurl.com/CutiesCast (last visited June 28, 2023).

*Dallas County*, 64 F.4th 616, 625 (5th Cir. 2023) (en banc) (emphasis added) (quoting *Bice v. La. Pub. Def. Bd.*, 677 F.3d 712, 716 (5th Cir. 2012)).

Netflix has such a remedy: even assuming it cannot raise the issue sooner, it can do so during the trial and on appeal, which suffices to vindicate most rights. *Abney v. United States*, 431 U.S. 651, 660 (1977). And that is not Netflix's only remedy; there are at least two potential pretrial remedies. "The 'gist of *Younger's* test for availability' is whether 'errors can be rectified according to state law, not that they must be rectified virtually immediately.'" *Little v. Doguet*, No. 20-30159, 2023 WL 4101428, at *5 (5th Cir. June 21, 2023) (quoting *Daves*, 64 F.4th at 633). "[S]tate remedies are inadequate only where 'state law *clearly bars* the interposition of the constitutional claims.'" *Id.* (quoting *Daves*, 64 F.4th at 632).

*First*, Netflix can seek a pre-trial determination by filing an Article 28.01 motion. *See* Tex. Code of Crim. Proc. art. 28.01. In *State v. Rosenbaum*, the CCA affirmed that such a motion may challenge the indictment's *legal* sufficiency—*i.e.*, whether the conduct charged can be the basis of the crime alleged. 910 S.W.2d 934, 937 (Tex. Crim. App. 1995) (en banc). In considering such a motion, the trial court may hold a pre-trial hearing and take evidence as necessary. *Id.* at 941.

*Second*, "[a] trial court may dismiss a charging instrument to remedy a constitutional violation." *State v. Mungia*, 119 S.W.3d 814, 817 (Tex. Crim. App. 2003). Dismissal of an indictment without the consent of the State is available if there is a constitutional violation, or where dismissal of the indictment is "necessary to neutralize the taint of the unconstitutional action." *Id*.

Nonetheless, Netflix complains (at 11) that it cannot obtain a pretrial writ of habeas corpus because it brings an as-applied challenge. But there are exceptions to that rule where the prosecution was brought in bad faith and thus may violate "rights that would be effectively undermined if not vindicated pre-trial," which is the position Netflix has taken. *Ex parte Perry*, 483 S.W.3d 884, 895-963 (Tex. Crim. App. 2016) (plurality op.). The fact that Netflix chose to flee to federal court instead does not make the relief any less available or *Younger* abstention any less appropriate.

## B. Netflix's claim creates an unseemly race to the courthouse on an issue of state law being litigated in Texas's highest criminal court.

Although Netflix argues (at 28) that the lower-court decision in *Lowry* settles the question of the constitutionality of the challenged indictments, that court did not address the act of "promotion" in section 43.262, or the same standard for lewd or indecent conduct applicable to section 43.25. ROA.549-50. In any event, now the CCA has granted review, and it may shine a light on the merits of Babin's case or even resolve the issue of whether Babin prosecuted Netflix without hope of success. Under those circumstances, abstention is appropriate. *See Tex. Democratic Party v. Abbott*, 961 F.3d 389, 418 (5th Cir. 2020) (Costa, J., concurring). Netflix makes three responses. None has merit.

*First*, Netflix suggests (at 38) abstention is inappropriate because Babin references *Pullman* rather than *Younger*. The different types of abstention, however, are not so distinct. 17A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4241 (3d ed. 1998) (describing "division" of

"categories" of abstention as "mere organizational convenience").[3] In any event, just because section 43.262 may be *patterned* on federal law does not mean it is consistent with it, *see Lowry*; nor can *Lowry's* interpretation of section 43.262 be relied upon now that the State's highest criminal court has granted review. And no state court has passed on section 43.25, which also would be better interpreted by a state court.

*Second*, Netflix challenges Babin's "misguided, retaliatory, and lonely effort" to evaluate whether *Cuties* includes "lewd exhibitions" and "sexual conduct" under *United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986); Resp. 37. But this attack requires determining whether *Dost* applies to section 43.25, which underscores rather than undermines the need to wait until the state court reaches this question.

*Third*, Netflix presents the novel argument that because *Dost* concerns images made by a defendant, and Babin showed the grand jury still images from the film, he "pursued *every* indictment without hope of obtaining a valid conviction." *Id.* at 38. Even if this were correct (and it is not), Netflix points to no case that bars *Dost's* application in this promotion case, especially when only one of the optional factors concerns the maker of the challenged images. *See* Op. 26-29. As a number of recent cases have made clear, internet platforms like Netflix are being held accountable for

---

[3] Babin also raised this argument below, ROA.555, and in any event, the concerns underlying *Pullman* are typically not deemed waivable. *Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 802 (9th Cir. 2001) (collecting cases).

their acquisition and promotion of content they do not produce.[4] Because the inter-action between such principles, the relevant state statutes, and the factors first artic-ulated in *Dost* is as yet unknown and better reached by a state court, the district court abused its discretion in refusing to abstain as a matter of law.

## IV. Netflix's Most "Salient" Facts Are Either Irrelevant or Inaccurate.

Netflix accuses Babin (at 20-21) of "ignoring the most salient facts the district court found in the record," and lists a handful of so-called facts Netflix finds most persuasive. But those facts do not accurately portray the record below. Throughout its brief, Netflix makes numerous inflammatory statements about how Babin has en-gaged in a "lone crusade," *id.* at 21, against "an award-winning film," *id.* at 2, whose artistic value is obvious in the light of "monolithic silence" of other prosecutors, *id.* at 35. These statements are legally irrelevant and factually inaccurate for several rea-sons.

To begin, the First Amendment does not turn on whether someone somewhere gave *Cuties* an award. A State may, consistent with the First Amendment, criminal-ize not just "sexually explicit material that violates fundamental notions of decency" as defined by community standards but also a broader range of "sexually explicit vis-ual portrayals that feature children." *United States v. Williams (II)*, 553 U.S. 285, 288

---

[4] Consumers are seeking to hold companies like Google, YouTube, and Face-book responsible for illegal or harmful content of which they were aware and that they ensured reached their targeted audience using their algorithms. *See, e.g.*, *Twit-ter, Inc. v. Taamneh*, 143 S. Ct. 1206 (2023); *Force v. Facebook, Inc.*, 934 F.3d 53 (2d Cir. 2019).

(2008). Whether something is obscene—let alone child pornography—is judged on a community-by-community basis. *Ashcroft*, 535 U.S. at 581 (plurality op.).

Netflix's own actions support that point. *Netflix* rated *Cuties* TV-MA, meaning it is intended for mature audiences and may contain indecent language, explicit sexual activity or graphic violence. *Cuties*, IMDb, https://www.imdb.com/title/tt9196192/ (last visited July 5, 2023).[5] *Cuties* is neither violent nor filled with expletives: by process of elimination, even the "industry" considered the film, which involved underage actors, to have explicit sexual activity.

Netflix also claims that "[n]o one complained" about *Cuties*. *E.g.*, Resp. 5, 35. That is a misstatement. Netflix's promotion of *Cuties* was derided as sexualizing the film, and the first few months of its release involved Netflix apologizing for how it promoted the film.[6] Though Netflix faults Babin (at 6-7) for capturing stills from the larger film and claims those images did not "accurately portray[] the film," *see* ROA.2396-97, Netflix had to apologize for the "inappropriate artwork that [it] used for Mignonnes/Cuties," after it created its own "provocative" poster using a still from a dance scene to boost viewership, @netflix, Twitter (Aug. 20, 2020, 11:36 AM), https://tinyurl.com/TwitterApology; *see* ROA.2353-54. Netflix was also

---

[5] This Court may take judicial notice of facts "whose accuracy cannot reasonably be questioned," *Swindol v. Aurora Flight Scis. Corp.*, 805 F.3d 516, 518-19 (5th Cir. 2015), including statements by a party on its own website, *Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) (per curiam).

[6] Netflix's original promotional poster and description of *Cuties* were first alluded to by Netflix in articles it cited in its motion for a preliminary injunction. ROA.318.

moved to change its description of the movie. Netflix's trailer for *Cuties* originally described the film as: "Amy, 11, becomes fascinated with a twerking dance crew. Hoping to join them, she starts to explore her femininity, defying her family's traditions." *Cuties Official Trailer*, Netflix, YouTube (Aug. 18, 2020), https://tinyurl.com/OriginalSynopsis.[7] The new description of the film is: "Eleven-year-old Amy starts to rebel against her conservative family's traditions when she becomes fascinated with a free-spirited dance crew." *Cuties Official Trailer*, Netflix, YouTube (Aug. 18, 2020), https://www.youtube.com/watch?v=M0O7lLe4SmA.

Netflix asserts (at 35) that Babin "*still* observes" "monolithic silence" with respect to *Cuties*. Netflix does not provide, and does not have, any evidence supporting that statement, nor was it part of the district court's findings. It is also contradicted by the materials Netflix referenced in its complaint. *See supra* p.20. And that is not the only statement of "fact" that is both unsupported and unreliable. Regardless of how much emphasis Netflix places on the unsupported assertion "that movie studios like Netflix don't stream child pornography," *id.* at 18, 28, 33, that *ipse dixit* cannot survive clear error review. Moreover, while Netflix argues that its streaming of *Cuties* should have "yielded multiple charges in multiple jurisdictions," *id.* at 35, it

---

[7] This circuit held that results from the Wayback Machine are not sufficiently accurate for judicial notice, *Weinhoffer v. Davie Shoring, Inc.*, 23 F.4th 579, 584 (5th Cir. 2022), but here the preserved website is Netflix's own website displaying Netflix's own past statement.

obscures the fact that several attorney generals in different States called for criminal charges on the ground that Netflix *did* stream child pornography.[8]

Finally, Netflix simply misstates the record on several occasions. Netflix asserts that "the district court found" that "not a single scene in *Cuties* can be credibly characterized as including 'zoomed in shots of the girls' *sexual organs*,'" and the "exhibition of anyone's 'genitals.'" *Id.* at 37 n.23 (quoting Br. 27). But the court stated only that one scene did not include genitals because the actress wore skintight clothing, ROA.1652, which is not the correct legal standard, *State v. Bolles*, 541 S.W.3d 128, 137 (Tex. Crim. App. 2017). Similarly, Netflix asserts that Babin "confessed" that his "manifest purpose in pursuing the New Indictments was both to stop and criminalize free expression (*Cuties*) and to retaliate [for] Netflix's habeas petition." Resp. 28. But Netflix's first citation is to Babin's press release that the grand jury found probable cause to indict Netflix, ROA.1080, and the second references Babin's concern that child pornography—not any protected activity from *Netflix*—be criminalized, ROA.1211.

## V. Babin Did Not Waive the Arguments He Made in His Opening Brief.

Netflix cannot avoid the conclusion that the district court committed reversible error in allowing this case out of the starting gate—yet alone by entering a preliminary injunction—by insisting that Babin is raising waived arguments. Babin's arguments simply address those raised below by either Netflix or the district court.

---

[8] Attorney generals from Florida, Louisiana, Ohio, and Texas called the film child pornography. Letter from Dave Yost, Ohio Att'y Gen., to Reed Hastings (Sept. 14, 2020), https://tinyurl.com/OHAGCuties.

Each of the arguments that Netflix insists are waived, moreover, relate to identifying the correct legal standard, and a party "cannot waive the correct interpretation of the law simply by failing to invoke it." *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 41 n.2 (2015) (Thomas, J., concurring); *see Langley v. Prince*, 926 F.3d 145, 162 & n.8 (5th Cir. 2019); *Winfield v. Dorethy*, 871 F.3d 555, 560 (7th Cir. 2017). Indeed, even if such a waiver were possible, it would be a textbook example of when this Court should exercise its well-established discretion to decide this pure question of law. *Forte v. Wal-Mart Stores, Inc.*, 780 F.3d 272, 276 (5th Cir. 2015).

In any event, preservation for the purpose of appeal requires that the party "substantially satisf[y] the requirement of putting the court on notice as to [its] concern," *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 174 (1988)—not the party can "conjure up [the] 'magic words,'" *Atemnkeng v. Barr*, 948 F. whether 3d 231, 240 (4th Cir. 2020) (quoting *Hanna v. Lynch*, 644 F. App'x 261, 268 (4th Cir. 2016)). Three examples of the issues that Babin supposedly waived will demonstrate that the district court was well aware that the questions were before it—typically raised by Netflix itself.

*First*, Netflix insists (at 24-25, 25 n.15) that Babin waived reliance on the major-motivating factor standard in determining a prosecutor's bad faith. But the district court relied on *Wilson*, ROA.1642, because Netflix raised that case several times in its briefing, *e.g.*, ROA.1622-23, 1647, 1651. Netflix did not confront the fact that *Wilson's* standard was effectively overruled by *Smith*, 693 F.2d at 366 n.18, 367, which Babin had the right to bring to the Court's attention.

*Second*, Netflix asserts (at 41 n.27) that Babin waived this Court's requirement of actual chill for a viable claim of retaliation for protected speech. Again, Netflix never once claimed to have changed its behavior as a result of any putative chill from threat of prosecution. *E.g.*, ROA.376, 406, 836, 1067. It also made no effort to reconcile its assertion of chill in the light of the law of this circuit, *Villarreal v. City of Laredo*, 44 F.4th 363, 373 (5th Cir.), *reh'g en banc granted, opinion vacated*, 52 F.4th 265 (5th Cir. 2022).

*Third*, Netflix complains (at 29 n.19) about Babin's use of the phrase "unnecessarily oppressive" conduct to describe what is required to show actionable harassment. Resp. 29 n.19; *see, e.g.*, ROA.782, 790, 794. As the two terms are synonyms in this context, that argument too was preserved. *Phelps*, 59 F.3d at 1066.

## Conclusion

The Court should reverse the judgment of the district court and vacate the preliminary injunction.

Respectfully submitted.

John Scott
Provisional Attorney General

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Lanora C. Pettit
Deputy Principal Solicitor General

/s/ Kathryn M. Cherry
Kathryn M. Cherry
Assistant Solicitor General
Kathryn.Cherry@oag.texas.gov

Counsel for Defendant-Appellant

## CERTIFICATE OF SERVICE

On July 5, 2023, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Kathryn M. Cherry
KATHRYN M. CHERRY

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,460 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Kathryn M. Cherry
KATHRYN M. CHERRY